1
2
3
4
5
6
7
8

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

*Attorney for Plaintiff and the Proposed Class*

9
10

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

11
12
13

NICHOLAS JABER, on behalf of himself, all others similarly situated and the general public,

14

Plaintiff,

15

v.

16
17

BPI SPORTS, LLC, IMAGE SPORTS, LLC, and BE POWERFUL, LLC,

18
19

Defendants.

Case No:

CLASS ACTION

**COMPLAINT FOR VIOLATIONS OF: CAL. BUS. & PROF. CODE §§17200 *et seq.*; CAL. BUS. & PROF. CODE §§17500 *et seq.*; CAL. CIV. CODE §§ 1750 *et seq.*; BREACH OF EXPRESS WARRANTIES; and BREACH OF IMPLIED WARRANTIES**

DEMAND FOR JURY TRIAL

20
21
22
23
24
25
26
27
28

Plaintiff Nicholas Jaber, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues BPI Sports, LLC, Image Sports, LLC, and Be Powerful, LLC (collectively "Defendants"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief and the investigation of his counsel.

## INTRODUCTION

1.     Defendants market "Ultra Concentrated Garcinia" (the "Product"), an herbal supplement that they falsely claim, *inter alia*, supports appetite control and weight loss, despite that its only purportedly active ingredient, Hydroxycitric Acid ("HCA") is scientifically proven to be incapable of providing such benefits.

2.     Plaintiff Nicholas Jaber read and relied upon Defendants' claims when purchasing the Product and was damaged as a result.

3.     Plaintiff brings this action challenging Defendants' weight-loss claims relating to Ultra Concentrated Garcinia on behalf of himself and all others similarly situated consumers in California, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"). Plaintiff further alleges that Defendants breached express and implied warranties under state law.

4.     Plaintiff seeks an order compelling Defendants to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which they have been unjustly enriched, and (e) pay restitution, damages, and punitive damages as allowed by law.

## JURISDICTION & VENUE

5.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because, based on information and belief,

more than two-thirds of the members of the Class reside in states other than the state of which any Defendant or their members are citizens.

6.     The Court has personal jurisdiction over Defendants because they have purposely availed themselves of the benefits and privileges of conducting business activities within California and within this district.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injuries as a result of Defendants' acts in this District, many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this District and Defendants (1) have intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District, and (2) are subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

8.      This civil action arises out of the acts and omissions of Defendants, which occurred in Oakland County. Pursuant to Civil Local Rule 3-2(c), this action is correctly assigned to the Oakland Division.

## PARTIES

9.     Plaintiff Nicholas Jaber is a resident of Alameda, California.

10.     BPI Sports, LLC is a Florida company with its principal place of business located at 3149 S.W. 42nd St., #200, Hollywood, Florida 33312. BPI Sports, LLC is the owner of the "BPI Health" trademark, under which the Product is currently sold. It was also the owner of the "Pro-Nutra" trademark, under which the Product was previously sold, before the trademark was abandoned in October 2013. According to the Florida Department of State, Division of Corporations, BPI Sports, LLC is doing business under the fictitious name BPI Health. BPI Sports, LLC's 2016 annual report, filed with the Florida Secretary of State, lists Be Powerful, LLC as its authorized manager and Derek Ettinger as its CEO.

11.     Image Sports, LLC, is a Florida company with its principal place of business located at 3149 S.W. 42nd St., #200, Hollywood, Florida 33312. On June 3, 2014, Pro Nutra LLC was merged with and into Image Sports, LLC. Image Sports, LLC is doing business

under the fictitious name Pro Nutra, LLC. BPI Sports, LLC's 2016 annual report, filed with the Florida Secretary of State, lists Be Powerful, LLC as its authorized manager and Derek Ettinger as its CEO.

12.    Be Powerful, LLC is a Florida company with its principal place of business located at 3149 S.W. 42nd St., #200, Hollywood, Florida 33312. Be Powerful, LLC is listed as the manager of BPI Sports, LLC and was listed as the manager of Pro Nutra LLC, before Pro Nutra, LLC was merged into and with Image Sports, LLC. Derek Ettinger, James Grage, and Jeff Settembrino, are the managing members and owners of Be Powerful, LLC.

13.    Upon information and belief, Derek Ettinger, James Grage, and Jeff Settembrino are residents of Florida.

## **FACTS**

### I.    Scientific Research Demonstrates that Garcinia Cambogia Extract (HCA) Is Not Effective in Supporting Weight Loss or Appetite Control

14.    Numerous randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide weight-loss benefits in humans.

15.    In 1998, Dr. Steven Heymsfield and his colleagues published the first study to "examine the effectiveness of hydroxycitric acid for weight loss and fat mass reduction in a rigorous controlled trial."[1]

16.    Dr. Heymsfield and his team of researchers specifically noted that, at that time, the "evidence of human hydroxycitric acid efficacy for weight control is based largely on studies with small sample sizes, studies that failed to include a placebo-treated group, and use of inaccurate measures of body lipid change." Therefore, their "investigation was designed to overcome limitations of earlier studies and examine the effectiveness of hydroxycitric acid for weight loss and fat mass reduction in a rigorous controlled trial."[2]

---

[1] S. Heymsfield et al., *Garcinia Cambogia (Hydroxycitric Acid) as a potential antiobestiy agent*, 280 J. Am. Med. Assoc. 1596, 1596 (1998).
[2] *Id.*

17.    The study was "carried out using accepted clinical trial design procedures and applying accurate body composition [measurement] methods," and was designed "to evaluate the efficacy of G. cambogia for body weight and fat mass loss in overweight human subjects."[3]

18.    The "study, carried out during a 12-week evaluation period and using accepted experimental design and in vivo analytic methods, failed to support the hypothesis that hydroxycitric acid as prescribed promotes either additional weight or fat mass loss beyond that observed with placebo."[4]

19.    "Specifically, body weight and fat mass change during the 12-week study period did not differ significantly between placebo and treatment groups."

20.    "Additionally, there were no observed selective fat-mobilizing effects specifically attributable to the active agent, hydroxycitric acid."

21.    The researchers specifically noted that the difference in weight loss between the subjects that received the HCA supplementation and those that received the placebo was "not statistically significant."[5]

22.    Further, "[b]ody weight change differences remained nonsignificant after controlling for patient starting weight, sex, and age,"[6] and "[i]n no case did any secondary analysis indicate any statistically significant effect for the active compound to produce more weight loss than placebo."[7]

23.    In addition, the study found that Garcinia Cambogia had no effect on fat loss.[8] Rather, "the percentage of fat mass differences also was nonsignificant," and "in no case did

---

[3] *Id.*
[4] *Id.* at 1599.
[5] *Id.* at 1598.
[6] *Id.*
[7] *Id.*
[8] *Id.*

analysis indicate any statistically significant effect for the active compound to produce a different percentage of body fat mass loss than the placebo."[9]

24.    In sum, this rigorous study, which "was designed to overcome limitations of earlier studies," "failed to support a specific weight loss effect of G Cambogia."[10]

25.    The next year, the International Journal of Obesity published a "double blind, placebo controlled, randomized, crossover study" that likewise concluded that HCA supplementation was not an effective weight loss agent in people consuming a typical mixed diet.[11]

26.    The authors of the study noted that "[t]here are reports to support the role of (-)-HCA in promoting weight loss during a de novo lipogenic state in rodent studies, however, most people taking these weight loss supplements are not consuming diets that produce substrate de novo lipogenesis."[12] Therefore, they designed their study to examine "the effect of (--)-HCA on the regulation of metabolism in humans consuming a typical Western diet (approx. $30 \pm 35\%$ total calories as fat)."[13]

27.    Once again, after conducting a rigorous trial, the "results d[id] not support (--)-HCA supplementation as an effective weight loss agent in people consuming a typical mixed diet."[14]

28.    The study found no effect on weight loss or fat metabolism.

29.    In fact, "[b]ody weight did not change over the course of the study."[15]

---

[9] *Id.*

[10] *Id.* at 1599.

[11] AD Kriketos et al., *-hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state*, 23 Int. J. Obesity 867 (1999).

[12] *Id.* at 868.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 870.

30.    Further, HCA supplementation had no effect "on circulating concentrations of blood substrates associated with fat oxidation and regulation of glucose metabolism."[16]

31.    Therefore, the authors concluded that "the inability to demonstrate metabolic changes consistent with citrate lyase inhibition suggests that this mechanism is not operable to promote weight reduction . . . ."[17]

32.     In 2000, Professor Richard Mattes, published a study in the Journal of Physiology and Behavior that found that HCA had no effect on appetite suppression or reduction.[18]

33.    Professor Mattes noted that "Hydroxycitric acid (HCA) reportedly promotes weight loss, in part, through suppression of hunger. However, this mechanism has never been evaluated in humans in a controlled study."[19]

34.    Therefore, Professor Mattes, designed a "randomized, double-blind, placebo-controlled, parallel group design study," in order "to assess the effect of G. cambogia on appetitive indices and their relationship with weight loss during moderate energy restriction."[20]

35.    Based on the results, Dr. Mattes noted that "[t]he present data on appetitive indices are unequivocal. No significant treatment effects were observed on mean, peak or nadir hunger ratings, mean ratings of desire to eat, prospective consumption, fullness or sensations of thirst, stomach growling, headache, distraction, irritability or, as a check on malingering, itchiness. Prior support for an appetitive effect was based on anecdote and data interpreted without a control treatment or pure HCA formulation. The appetitive indices also

---

[16] *Id.* at 872.
[17] *Id.* at 873.
[18] Richard D. Mattes & Leslie Bormann, *Effects of (-)-hydroxycitric acid on appetitive variables*, 71 Physiol. & Behav. 87 (2000).
[19] *Id.* at 87.
[20] *Id.* at 88.

were not significantly associated with energy intake or body weight change within the active treatment participants."[21]

36.     "No effects of the HCA were observed on appetitive variables. The active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. This study does not support a satiety effect of HCA."[22]

37.     The authors concluded that HCA does not suppress appetite, promote satiety, or "promote improved compliance with a reduced energy diet."[23]

38.     In short, "Mattes and colleagues reported that HCA supplementation (2.4 g/d for 12-weeks) did not affect appetite, energy intake, or weight loss."[24]

39.     Also in 2000, the American Journal of Clinical Nutrition published a study that found that "HCA, even when provided in large quantities, does not increase total fat oxidation in vivo."[25]

40.     The "study showed that large doses of G. Cambogia extract [(18 ± 0.4 g HCA)] do get absorbed in the intestine and can lead to a substantial increase in plasma HCA concentrations. However, this does not affect fat and carbohydrate oxidation rates."[26]

41.     "Accordingly, a direct effect of HCA on fat oxidation seems unlikely to contribute to its claimed antiobesity or ergogenic potential."[27]

---

[21] *Id.* at 92.
[22] *Id.* at 87.
[23] *Id.* at 92.
[24] Kreider et al., *ISSN exercise & sport nutrition review: research & recommendations*, 7 J. Int. Soc. Sports Nutr. 7 (2010).
[25] Van Loon L et al., *Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans,* 72 Am. J. Clin. Nutr. 1445, 1445 (2000).
[26] *Id.* at 1449.
[27] *Id.*

42.     Thus, the authors "conclude[d] that plasma HCA availability does not increase energy expenditure or stimulate skeletal muscle fat oxidation."[28]

43.     In 2001, a study publish in the International Journal of Obesity that tested the effect of HCA, found that "Two-week supplementation with HCA . . . did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss."[29]

44.     The study employed a "double-blind, placebo-controlled, randomized, cross-over design" and specifically examined the effects of HCA *alone* and HCA in combination medium-chain triglycerides on "satiety, fat oxidation, energy expenditure and body weight."[30]

45.     Like other controlled human trials, the study found that HCA "did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss."[31]

46.     The authors specifically noted that "BW [body weight] reduction was not different between treatments," and that "no difference in body fat loss was found between treatments."[32]

47.     In addition, "[t]he results did not support the hypothesis that HCA supplementation may be effective on appetite and weight control by increasing fat oxidation."[33]

48.     To the contrary, "no effect of HCA on fat oxidation or 24 h energy expenditure was found."[34]

---

[28] *Id.* at 1448.
[29] E. Kovacs et al., *The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight*, 25 Int. J. Obes. 1087, 1087 (2001).
[30] *Id.* at 1088.
[31] *Id.* at 1087.
[32] *Id.* at 1091.
[33] *Id.* at 1087.
[34] *Id.* at 1092.

49.    Further, "There was no difference in SMR [sleeping metabolic rate], RMR [resting metabolic rate], DIT [diet-induced thermogenesis] and AEE [activity-induced energy expenditure] between treatments."[35]

50.    Put simply, "HCA was not effective."[36]

51.    The results of more recent studies have been the same: "Garcinia cambogia extract did not show dietary efficacy."[37]

52.    A 2008 study published in the Journal of Clinical Biochemistry and Nutrition, found that "hydroxycitric acid had no significant effect on the body component" and that "dietary efficacy was not indicated."[38]

53.    That study, which employed a "double-blind, non-cross-matching test,"[39] found that "Garcinia cambogia extract did not show dietary efficacy."[40]

54.    A 2011 study publish in the prominent Nutrition Journal found that Garcinia Cambogia extract supplementation "failed to promote weight-loss or any clinically significant change in % body fat."[41]

55.    The researchers noted that "the evidence for the effectiveness of natural food supplements to promote weight-loss and improve health is largely derived from animal studies. Therefore, it is essential randomized double-blind placebo-controlled trials (RCTs)

---

[35] *Id*. at 1091.

[36] *Id*. at 1093.

[37] Yoshikazu Yonei et. al, *Effects on the Human Body of a Dietary Supplement Containing L-Carnitine and Garcinia Cambogia Extract: A Study using Double-blind Tests*, 42 J. Clin. Biochem. Nutr. 89, 101 (2008).

[38] *Id*. at 100.

[39] *Id*. at 90.

[40] *Id*. at 101.

[41] Kim et al., *Does Glycine max leaves or Garcinia Cambogia promote weight-loss or lower plasma cholesterol in overweight individuals: a randomized control trial*, 10 Nutr. J. 94, 94 (2011).

are conducted to determine the effectiveness of natural food supplements to promote weight-loss."[42]

56.   The randomized double-blind placebo-controlled trial found that "GCE supplementation was not effective in promoting weight-loss in overweight individuals."[43]

57.   Further, "[i]n agreement with past studies the present study provided no evidence that [garcinia cambogia extract] GCE supplementation can modify calorie intake in overweight individuals consuming their habitual diet."[44]

58.   Like the previous studies, "neither EGML nor GCE supplementation alone can promote weight-loss in overweight individuals."[45]

59.   Based on these and other studies, numerous other researchers, scientists and medical experts have concluded that Garcinia Cambogia is not an effective weight-loss tool.

60.   For example, the renowned National Institutes of Health ("NIH") concluded that Garcinia Cambogia has "Little to no effect on body weight."[46]

61.   In *An Evidence-Based Review of Fat Modifying Supplemental Weight Loss Products*, published by the Journal of Obesity in 2011, Mary M. Egras and her colleagues noted, "The data that is available," regarding HCA, "does not demonstrate significant weight loss. Therefore, *Garcinia cambogia* or HCA is not recommended at this time."[47]

62.   In 2010, a team of researchers headed by Richard B. Kreider reviewed the scientific evidence regarding the efficacy of various weight-loss supplement ingredients, including Garcinia Cambogia. Based on the available scientific evidence the team concluded that "[a]lthough there is some evidence that HCA may increase fat metabolism in *animal*

---

[42] *Id.* at 94-95.
[43] *Id.* at 101.
[44] *Id.* at 102.
[45] *Id.*
[46] *See* National Institutes of Health, *Dietary Supplements for Weight Loss*, *available at,* https://ods.od.nih.gov/factsheets/WeightLoss-HealthProfessional.
[47] Amy M. Egras et al., *An Evidence-Based Review of Fat Modifying Supplemental Weight Loss Products*, 10 J. Obesity 1155, 1159 (2011).

*studies*, there is little to no evidence showing that HCA supplementation affects body composition in *humans*." Therefore, Kreider and his team concluded that "HCA supplementation does not appear to promote fat loss in humans."[48] (emphasis added)

63.    These studies, all of which were controlled human trials, affirmatively demonstrate that Garcinia Cambogia extract (HCA) does not and cannot aid in weight loss or appetite control.

## II.    Defendants' Sale and Marketing of Ultra Concentrated Garcinia

64.    Defendants manufacture, distribute, and/or market the Product, Ultra Concentrated Garcinia.

65.    Defendants have distributed, marketed, and sold Ultra Concentrated Garcinia on a nationwide basis, including California, for at least the past several years.

66.    Ultra Concentrated Garcinia is sold nationally, including in California, at major retailers such as GNC.

67.    Ultra Concentrated Garcinia is also available online at Amazon.com, ebay.com, luckyvitamin.com, and many more "e-tailer" websites.

///
///
///
///
///
///
///
///
///
///

---

[48] Kreider et al., *ISSN exercise & sport nutrition review: research & recommendations*, 7 J. Int. Soc. Sports Nutr. 7 (2010).

68.    Ultra Concentrated Garcinia was originally marketed and sold bearing a "Pro-Nutra" logo, Figure 1, but is now marketed and sold bearing a "bpi Health" logo, Figure 2.




Figure 1.                                        Figure 2.

69.    As seen in the figures above, the labeling of Ultra Concentrated Garcinia was almost unchanged, varying only in brand logo and minor color changes.

70.    Further, Ultra Concentrated Garcinia never changed in composition, at all times containing, according to the label, 1500mg of Garcinia Cambogia Extra, 50 percent of which (or 750mg) was claimed to be HCA.

71.    Ultra Concentrated Garcinia comes in tablet form and is sold in various quantities, including bottles of 60 and 120 tablets.

III.    **The Composition of Ultra Concentrated Garcinia**

72.    Defendants claim that Ultra Concentrated Garcinia, by means of its HCA is effective as a weight-loss product. However, HCA, the lone "active" ingredient in the Product, is incapable of providing any weight-loss benefits.

73.    Ultra Concentrated Garcinia consists of a single purportedly "active" ingredient HCA, which is extracted from Garcinia Cambogia. Figure 3, below, shows the supplement facts panel of Ultra Concentrated Garcinia, as displayed on its packaging.



Figure 3.

74.    Defendants claim that one tablet contains 750mg of HCA.

IV.    **Ultra Concentrated Garcinia's Misleading Labeling Claims**

75.    Defendants market and advertise Ultra Concentrated Garcinia as an effective weight-loss supplement through claims placed directly on the bottle and packaging of the Product despite that it provides no such benefits.

13

A.   **Defendants Market Ultra Concentrated Garcinia with False and Misleading Labeling Claims**

76.   Below are true and correct exemplars and/or pictures of the complete Ultra Concentrated Garcinia labels, when sold with the Pro-Nutra logo, Figure 4, and when sold with the bpi Health logo, Figure 5, respectively.



Figure 4.



Figure 5.

14

77.    **Misleading "Ultra Concentrated Garcinia" claim**: The very name of the Product, "Ultra Concentrated Garcinia," conveys to consumers to that the Product is potent and will therefore be effective in providing the claimed weight-loss benefits. This claim, individually and especially in context of the label as a whole, is misleading because the Product's lone "active" ingredient is incapable of providing any weight-loss benefits, regardless of how concentrated its formula.

78.    **Misleading "WEIGHT LOSS" and "APPETITE SUPPORT" claims**: Defendants prominently label Ultra Concentrated Garcinia with the phrases "WEIGHT LOSS" and "APPETITE SUPPORT," in bold white print. These claims convey or suggest that the Product is capable of and will help consumers lose weight and control their appetite. However, these claims, taken individually and especially in context of the label as a whole, are misleading because the Product's lone "active" ingredient, HCA, is incapable of providing any weight-loss benefits. Although Defendants attempt to qualify these claims with the phrase "May Experience," which is printed in smaller, less noticeable grey lettering, the clear implication to consumers is that the Product is capable of aiding weight loss and appetite support. Indeed, if consumers did not believe that it could, they would have no reason to purchase the Product.

79.    **Misleading "appetite and weight management" claim:** In an attempt to bolster their weight-loss and appetite-support claims, Defendants also suggest that garcinia cambogia "make[s] meals more filling" and the "active constituent of the fruit, HCA (hydroxycitric acid), is believed to have beneficial effects on appetite and weight management." These claims further convey or suggest that the Product is capable of providing weight-loss and appetite-control benefits. However, these claims, taken individually and especially in context of the label as a whole, are misleading because the Product's lone "active" ingredient, HCA, is incapable of providing any weight-loss benefits.

80.    **Misleading "Potency" claims:** In addition, the Ultra Concentrated Garcinia label bears several claims suggesting that it is a strong, potent product and therefore effective in providing the claimed weight-loss benefits. The front of the label, for example, bears a

15

prominent emblem stating that the Product is "TRIPLE STRENGTH," with "1500mg Garcinia Cambogia Extract (750mg HCA)." In similar fashion, the labels bears the claim "1500mg PURE GARCINIA CAMBOGIA EXTRACT" and "50.0% Hydroxycitric Acid (HCA)." These claims, taken individually and especially in context of the label as a whole, are misleading because the Product's lone "active" ingredient is incapable of providing any weight-loss benefits.

81.     In short, the claims on the label of Ultra Concentrated Garcinia convey the concrete overall message that the Product, by means of its HCA content, can help consumers lose weight and control their appetite. Defendants intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**I.    The Labeling of the Ultra Concentrated Garcinia Violates California and Federal Statutes and Regulations**

**A.    Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law**

82.     Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food and dietary supplement labeling requirements as its own. *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto."); *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

83.     For the purposes of labeling, "a dietary supplement shall be deemed to be a food." *See* 21 U.S.C. § 321(ff).

84.     The Federal Food Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

85. Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

**B.    Ultra Concentrated Garcinia's False and Misleading Labeling Claims Render it Misbranded Under California and Federal Law**

86. Defendants' deceptive statements described herein violate Cal. Health & Safety Code § 110660 and 21 U.S.C. § 343(a), which deem a food or dietary supplement misbranded if its labeling is "false or misleading in any particular."

87. Further, Defendants' labeling of Ultra Concentrated Garcinia is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

**C.    Defendants' Ultra Concentrated Garcinia is Misbranded Because it Makes Unauthorized Structure Function Claims**

88. Ultra Concentrated Garcinia is further misbranded because its label bears structure function claims even though the Product does not meet the requirements to make such claims.

89. Specifically, the statements "WEIGHT LOSS" and "APPETITE SUPPORT," and are structure function claims.

90. These claims violate 21 U.S.C. 343(r)(6) because the weight of scientific evidence does not support these claims as being "truthful and not misleading" as required. *See* 21 U.S.C. 343(r)(6).

91. To the contrary, scientific evidence, as alleged herein, *affirmatively* demonstrates that HCA is incapable of providing these benefits.

92. Ultra Concentrated Garcinia is thus "misbranded" and bears a "false or misleading label" under California Health and Safety Code §§ 110390, 110660. *See also* 21 U.S.C. § 343. As such, Ultra Concentrated Garcinia violates the Sherman Law, including but not limited to California Health and Safety Code §§ 110390, 110660.

## IV.   Plaintiff's Purchase, Reliance, and Injury

93.   Mr. Jaber believes he purchased a 60-tablet bottle of Ultra Concentrated Garcinia in or around January 2016 from the GNC store located at 4058 Piedmont Ave, Oakland, California 94611, for approximately $50.

94.   When deciding to purchase Ultra Concentrated Garcinia, Plaintiff read and relied on the following claims on the Ultra Concentrated Garcinia label:

> a.   "Ultra Concentrated Garcinia"
>
> b.    "WEIGHT LOSS" and "APPETITE SUPPORT"
>
> c.   "TRIPLE STRENGTH"
>
> d.   "1500mg Garcinia Cambogia Extract (750mg HCA)"
>
> e.   "1500mg PURE GARCINIA CAMBOGIA EXTRACT"
>
> f.   "50.0% Hydroxycitric Acid (HCA)"
>
> g.   "Garcinia cambogia . . .  has been used . . . to make meals more filling" and
>
> h.   "An active constituent of the fruit, HCA (hydroxycitric acid), is believed to have beneficial effects on appetite and weight management."

95.   Based on these representations, Plaintiff believed Ultra Concentrated Garcinia was capable of providing weight-loss benefits and would help him lose weight, and suppress or control his appetite.

96.   When purchasing Ultra Concentrated Garcinia, Plaintiff was seeking a Product that had the qualities described on the Ultra Concentrated Garcinia label, namely, an effective weight-loss supplement that aids in weight loss and appetite control.

97.   After purchasing Ultra Concentrated Garcinia, Mr. Jaber took it as directed on its label, but experienced no weight loss, improved appetite control, or other weight-loss benefits.

98.   The representations on the Ultra Concentrated Garcinia label were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described

18

in detail herein, Ultra Concentrated Garcinia did not deliver the purported benefits nor is it capable of delivering the purported benefits.

99.    Plaintiff acted reasonably in relying on the weight-loss claims that Defendants intentionally placed on the Ultra Concentrated Garcinia label with the intent to induce average consumers into purchasing it.

100.    Ultra Concentrated Garcinia costs more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

101.    Plaintiff paid more for Ultra Concentrated Garcinia, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

102.    For these reasons, Ultra Concentrated Garcinia was worth less than what Plaintiff paid for it.

103.    Instead of receiving a product that had actual beneficial weight-loss properties, the Product that Plaintiff and the Class received was one that does not and cannot deliver the claimed weight-loss benefits.

104.    Plaintiff would not have purchased Ultra Concentrated Garcinia if he knew that it was misbranded pursuant to California and FDA regulations or that its labeling claims were false or misleading.

105.    Plaintiff lost money as a result of Defendants' deceptive claims and practices in that he did not receive what he paid for when purchasing Ultra Concentrated Garcinia.

106.    Plaintiff detrimentally altered his position and suffered damages in an amount equal to the amount he paid for the Product.

107.    The senior officers and directors of Defendants, including Derek Ettinger, James Grage, and Jeff Settembrino, allowed Ultra Concentrated Garcinia to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

108.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a Class of all persons in California who purchased, for personal or household use, and not for resale or distribution, Defendants' Ultra Concentrated Garcinia Product (the "Class").

109.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

110.   Questions of law and fact common to Plaintiff and the Class include:

     a.   whether Defendants communicated a message regarding weight-loss benefits of the Product through its packaging and advertising;

     b.   whether that message was material, or likely to be material to a reasonable consumer;

     c.   whether the challenged claims discussed herein are false, misleading, or likely to deceive a reasonable consumer;

     d.   whether Defendants' conduct violates public policy;

     e.   whether Defendants' conduct violates state and federal food statutes or regulations;

     f.   the proper amount of damages, including punitive damages;

     g.   the proper amount of restitution;

     h.   the proper injunctive relief, including a corrective advertising campaign; and

     i.   the proper amount of attorney's fees.

111.   These common questions of law and fact predominate over questions that affect only individual Class Members.

112.   Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the challenged Product, and suffered economic

1   injury because the Product was and still is misrepresented. Absent Defendants' business
2   practice of deceptively and unlawfully labeling Ultra Concentrated Garcinia, Plaintiff and
3   Class Members would not have purchased Ultra Concentrated Garcinia.

4        113.   Plaintiff will fairly and adequately represent and protect the interests of the
5   Class, has no interests incompatible with the interests of the Class, and has retained counsel
6   competent and experienced in class action litigation, and specifically in litigation involving
7   the false and misleading advertising.

8        114.   Class treatment is superior to other options for resolution of the controversy
9   because the relief sought for each Class Member is small relative to the cost of litigation such
10  that, absent representative litigation, it would be infeasible for Class Members to redress the
11  wrongs done to them.

12       115.   Questions of law and fact common to the Class predominate over any questions
13  affecting only individual Class Members.

14       116.   Defendants have acted on grounds applicable to the Class, thereby making
15  appropriate final injunctive and declaratory relief concerning the Class as a whole.

16       117.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P.
17  23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

18       118.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint
19  as if set forth in full herein.

20       119.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."
21  Cal. Bus. & Prof. Code § 17200.

22       120.   The acts, omissions, misrepresentations, practices, and non-disclosures of
23  Defendants as alleged herein constitute business acts and practices.

### Fraudulent

121.    A statement or practice is fraudulent under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

122.    As set forth herein, Defendants' claims relating to Ultra Concentrated Garcinia are likely to mislead reasonable consumers to believe the Product can provide weight-loss benefits, when it cannot.

## Unlawful

123.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- •    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- •    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- •    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- •    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875  *et seq.*

## Unfair

124.    Defendants' conduct with respect to the labeling, advertising, and sale of the Product was unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

125.    Defendants' conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

126.    Defendants' conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

127.   Defendants profited from their sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

128.   Plaintiff and Class Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continues to disseminate misleading information. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

129.   Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

130.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

131.   Plaintiff and the Class also seek an order for disgorgement and restitution of all monies from the sale of Defendants' Ultra Concentrated Garcinia, which may have been unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

132.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

133.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

134.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

23

135.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Product misled consumers acting reasonably as to the effectiveness and weight-loss properties of the Product.

136.   Plaintiff suffered injury in fact as a result of Defendants' actions as set forth herein because he purchased the Product in reliance on Defendants' false and misleading labeling claims that the Product, among other things, can provide weight-loss benefits, specifically, aiding weight loss and appetite control.

137.   Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Product in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising.

138.   Defendants profited from their sale of the falsely and deceptively advertised Product to unwary consumers.

139.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

140.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

### THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

141.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

142.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

24

143.   Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Ultra Concentrated Garcinia for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

144.   Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Ultra Concentrated Garcinia to unwary consumers.

145.   As a result, Plaintiff and the Class have suffered harm, and therefore seek, (a) actual damages in the amount of the total retail sales price of the Ultra Concentrated Garcinia Products sold throughout the Class Period to all Class Members, and (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution.

146.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

147.   Pursuant to California Civil Code § 1782 Plaintiff notified BPI Sports, LLC, Image Sports, LLC, and Be Powerful, LLC, in writing by certified mail, return receipt requested of his claims and the particular violations of § 1770 of the Act, but Be Powerful, LLC, Image Sports, LLC, and BPI Sports, LLC failed to remedy the violations within 30 days thereafter.

148.   Because Defendants failed to implement remedial measures, Plaintiff, on behalf of himself and the Class, seeks injunctive relief under Civil Code § 1782(d), as well as actual and punitive damages, including attorneys' fees.

149.   In compliance with Cal. Civ. Code § 1780(d), Plaintiff Nicholas Jaber's affidavit of venue is filed concurrently herewith, attached to the Complaint.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties,

### Cal. Com. Code § 2313(1)

150.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

151.   Through the Ultra Concentrated Garcinia labels and advertising, Defendants made affirmations of fact or promises, or description of goods, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1). Specifically, Defendants warranted that Ultra Concentrated Garcinia aids, *inter alia*, "WEIGHT LOSS" and "APPETITE SUPPORT."

152.   Defendants breached the express warranties by selling a Product that does not and cannot provide the promised benefits.

153.   That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for Ultra Concentrated Garcinia.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty,

### Cal. Com. Code § 2314

154.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

155.   Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of Ultra Concentrated Garcinia, made representations to Plaintiff and the Class that, among other things, Ultra Concentrated Garcinia can aid weight loss and appetite control.

156.   Plaintiff and the Class bought Ultra Concentrated Garcinia manufactured, advertised, and sold by Defendants, as described herein.

157.    Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

158.    However, Defendants breached that implied warranty in that Ultra Concentrated Garcinia provides no weight-loss benefits, as set forth in detail herein.

159.    As an actual and proximate result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

160.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Ultra Concentrated Garcinia's purchase price.

## **PRAYER FOR RELIEF**

161.    Wherefore, Plaintiff, on behalf of himself, all others similarly situated and the general public, prays for judgment against Defendants as to each and every cause of action, and the following remedies:

A.    An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing undersigned counsel as class counsel;

B.    An Order requiring Defendants to bear the cost of class notice;

C.    An Order compelling Defendants to conduct a corrective advertising campaign;

D.    An Order compelling Defendants to destroy all misleading and deceptive advertising materials and Product labels, and to recall all offending Products;

E.    An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

F.    An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

G.    An Order requiring Defendants to pay actual and punitive damages where permitted under law;

H.     An award of attorneys' fees and costs; and

I.     Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: September 19, 2016          /s/ Paul K. Joseph
                                   **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                   PAUL K. JOSEPH
                                   *paul@pauljosephlaw.com*
                                   4125 W. Point Loma Blvd., No. 206
                                   San Diego, CA 92110
                                   Phone: (619) 767-0356
                                   Fax: (619) 331-2943
                                   ***Attorney for Plaintiff and the Proposed Class***